HARRY RAVALESE,
*Plaintiff*,

v.

TOWN OF EAST HARTFORD, *et al.*,
*Defendants*.

No. 3:16-cv-1642 (VAB)

## RULING AND ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT

On February 15, 2019, the Town of East Hartford ("East Hartford"), Kathryn Weaver, John and Jane Doe, and Scott Sansom (collectively, "Defendants") moved for partial summary judgment as to a number of the claims brought by Harry Ravalese ("Plaintiff") in this civil rights action. Defendants' Partial Motion for Summary Judgment, dated Feb. 15, 2019 ("Defs.' Mot."), ECF No. 80; Memorandum of Law in Support of Defs.' Mot., dated Feb. 15, 2019 ("Defs.' Mem."), ECF No. 80-1; Local Rule 56(a)(1) Statement of Material Facts, dated Feb. 15, 2019 ("Defs.' SMF"), ECF No. 80-2.

On April 22, 2019, Mr. Ravalese opposed the motion. Plaintiff's Opposition to Defs.' Mot., dated Apr. 22, 2019 ("Pl.'s Opp."), ECF No. 87; Local Rule 56(a)(2) Statement, dated Apr. 22, 2019 ("Pl.'s SMF"), ECF No. 87-1.

For the reasons explained below, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for partial summary judgment.

The Court grants summary judgment to Defendants as to the following of Plaintiff's claims: (1) all claims against Jane Doe; (2) the claim for malicious prosecution under 42 U.S.C. § 1983; (3) the claim of false arrest under 42 U.S.C. § 1983; (4) the *Monell* claim against East Hartford and Chief Sansom; (5) the official capacity claims against Officer Weaver, John Doe,

and Chief Sansom, which are duplicative of the *Monell* claim; (6) the claims of negligence arising from the officers' investigation and arrest of Plaintiff only; (7) the claim of intentional infliction of emotional distress arising from the officers' investigation and arrest only; (8) the claim of negligent infliction of emotional distress arising from the officers' investigation and arrest only; (9) the claim of recklessness arising from the officers' investigation and arrest only; (10) the claims under Article I, §§ 8 and 20 of the Connecticut Constitution; and (11) the claims of municipal liability under CONN. GEN. STAT. § 52–557n that are based on the claims of negligence arising from the officers' investigation and arrest only.

The Court denies Defendants' motion with respect to the following claims: (1) the claim of municipal liability under CONN. GEN. STAT. § 52–557n, based on the claim of negligence arising from the officers' use of excessive force; and (2) the claim of indemnification under CONN. GEN. STAT. § 7–465, based on the claim of negligence arising from the officers' use of excessive force.

The Court reserves decision as to summary judgment on all remaining claims against John Doe, following a properly-filed motion to amend the Complaint and any subsequent briefing.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations[1]

On October 4, 2014, at or about 11:30 p.m. at night, an unidentified person called 911 and reported an elderly woman in distress at the House of Flowers, located at 456 Main Street in East Hartford, Connecticut. Defs.' SMF ¶ 3; Pl.'s SMF ¶ 3.

---

[1] The following facts are undisputed unless indicated otherwise.

Mr. Ravalese and his brother, Michael Ravalese, own the House of Flowers (also referred to as the "Flower Shop"), which sits on a large parcel owned by several members of their family. Defs.' SMF ¶ 2; Pl.'s SMF ¶ 2. At the time, Mr. Ravalese and his mother, Carmelina Ravalese (93 years old at the time), lived together in a single-family residence, also located on the parcel at 456 ½ Main Street. *Id.* There is also another finished structure on the parcel known as "the barn," which is used for recreational activities. *Id.*

The caller reported "that she observed an elderly woman sitting by herself in an armchair within the Flower Shop screaming and crying." Defs.' SMF ¶ 3; Pl.'s SMF ¶ 3.

Shortly after the call, East Hartford Police Officer Kathryn Weaver arrived at the property. Defs.' SMF ¶ 4; Pl.'s SMF ¶ 4. Sometime after that, East Hartford Police Officer Richard Hill arrived on the scene. Defs.' SMF ¶ 5; Pl.'s SMF ¶ 5.

What happened next is in dispute.

Mr. Ravalese alleges that he was inside his residence with his nephew and a friend when he heard a knock on the door. Compl. ¶¶ 15–16. When he opened the door, Officer Weaver allegedly "without meaningful investigation of the facts and circumstances surrounding her accusations, falsely accused [him] of abusing his 93 year old mother, who was visiting his sister next door." *Id.* ¶ 17. Mr. Ravalese "denied the allegations" and "asked Officer Weaver what she was talking about," telling her "that she was making a terrible mistake, that she was on private property, and to leave." Defs.' SMF ¶ 26; Pl.'s SMF ¶ 26.

Officer Weaver allegedly told Mr. Ravalese that she was going to arrest him. Pl.'s SMF at 11, ¶ 12 (" . . . she accused him of 'abusing an elderly woman and . . . lock[ing] her in a flower shop' and then said twice, 'I'm taking you down.'") (citing deposition transcripts). Officer Weaver then allegedly instructed him "to turn around, and then grabbed him and proceed[ed] to

forcibl[y] bring him to the ground by tripping and pushing him." *Id.* at 12, ¶ 17. At that point, she allegedly said "something to the effect of, '[w]ell, mistakes happen.'" *Id.* (citing Plaintiff's deposition). Even though he allegedly complied with her order to turn around, Officer Weaver nevertheless "forcibly threw [him] to the ground, jumped on his back with her knees and twisted his arms forcefully behind him to apply handcuffs." Compl. ¶ 20.

Officer Weaver then allegedly charged Mr. Ravalese with "Breach of Peace" and took him to the East Hartford Police Station. *Id.* ¶ 22. When he was "later released on bond," he allegedly "was told not to speak with his mother, despite his caretaking role with her and his continued concern for her wellbeing." *Id.* ¶ 23.

Defendants allege that Officer Weaver had additional conversations before speaking with Mr. Ravalese. Specifically, Defendants allege that when Officer Weaver arrived at the property she did not observe an elderly woman, but did see "lights on inside the Flower Shop, despite the late hour." Defs.' SMF ¶ 6. She then allegedly knocked on the door of the House of Flowers and spoke with Mr. Ravalese's brother, Michael Ravalese. *Id.* ¶¶ 7–9. Mr. Ravalese does not dispute that Officer Weaver spoke with his brother. Pl.'s SMF ¶¶ 7–8.

Michael Ravalese allegedly reported that his mother "was crying because she was upset with plaintiff," because Plaintiff had arrived two hours late to pick her up. *Id.* ¶¶ 9–10. Because of his late arrival, Ms. Ravalese allegedly refused to leave with Harry Ravalese. *Id.* ¶ 11. Michael Ravalese allegedly reported that Harry Ravalese had called him and "banged on the door of the establishment numerous times," and was "hootin' and hollerin'" outside. *Id.* ¶ 12.

Officer Weaver allegedly attempted to corroborate this report by speaking with Ms. Ravalese, but found that she spoke only limited English. Nevertheless, Ms. Ravalese allegedly repeated the words "No, Harry" stated "I stay here." *Id.* ¶¶ 15–16. She also allegedly "began

speaking quickly in Italian" and made "a 'shooing' motion by pushing her hands and/or arms away from her body with great force and repetition." *Id.* ¶ 17. Michael Ravalese allegedly translated these words and actions for Officer Weaver, telling her that Ms. Ravalese "wanted to stay with Michael at the Flower Shop and did not want plaintiff around." *Id.* ¶ 18. Michael Ravalese then allegedly informed Officer Weaver that Harry Ravalese "was in a detached structure located behind the Flower Shop, the barn, and asked that the officer request that plaintiff not return to the Flower Shop for the remainder of the evening." *Id.* ¶ 20.

It is undisputed that the East Hartford police arrested Harry Ravalese and charged him with Breach of Peace in the Second Degree. Defs.' SMF ¶ 28; Pl.'s SMF ¶ 28.

## B. Procedural History

On September 30, 2016, Harry Ravalese sued the Town of East Hartford, East Hartford Police Chief Scott Sansom (in both his individual and official capacity), East Hartford Police Officer Kate Weaver (in both her individual and official capacity), East Hartford Police Sergeant Joseph Ficacelli (in both his individual and official capacity), and John Doe and Jane Doe, two unidentified East Hartford Police Officers (in both their individual and official capacity), alleging causes of action for violations of his constitutional rights under both the United States and Connecticut Constitutions. Complaint, dated Sept. 30, 2016 ("Compl."), ECF No. 1. Mr. Ravalese also sued all of the named Defendants for violations under Connecticut law. *Id.*

On November 22, 2016, all named Defendants answered, denying all substantive allegations of liability and asserting multiple affirmative defenses. Answer, dated Nov. 22, 2016, ECF No. 30.

On December 13, 2016, the Court held a telephonic discovery conference and, shortly thereafter, issued an initial scheduling order setting pre-trial deadlines, with discovery to close by April 6, 2018. Scheduling Order, dated Dec. 13, 2016, ECF No. 35.

On August 16, 2017, Mr. Ravalese moved to dismiss Sergeant Ficacelli from the action. Motion to Withdraw Plaintiff's Complaint as to Defendant Sergeant Joseph Ficacelli, dated Aug. 16, 2017, ECF No. 42. On August 17, 2017, the Court granted that motion, dismissing all claims against Sergeant Ficacelli. Order, dated Aug. 17, 2017, ECF No. 43.

On September 27, 2017, the Town of East Hartford, Chief Scott Sansom, Officer Kate Weaver, John Doe, and Jane Doe (hereafter, "Defendants") moved for leave to file an amended Answer and affirmative defenses. Motion for Leave to File Answer and Amended Affirmative Defenses, dated Sept. 27, 2017, ECF No. 51.

On October 3, 2017, the Court granted that motion. *See* Minute Entry, dated Oct. 3, 2017, ECF No. 54.

On November 29, 2018—after the case had been delayed at the request of the parties—the Court held a telephonic scheduling conference and entered a schedule for briefing dispositive motions, Minute Entry, dated Nov. 29, 2018, ECF No. 73; Amended Scheduling Order, dated Nov. 29, 2018, ECF No. 74.

On February 15, 2019, Defendants moved for partial summary judgment. *See* Defs.' Mot. Specifically, Defendants moved for summary judgment as to: (1) all claims against John Doe and Jane Doe; (2) all official capacity claims against Ms. Weaver, John Doe, Jane Doe, and Scott Sansom; (3) all claims under § 1983 for false arrest and malicious prosecution; (4) all state law claims to the extent that they are predicated upon plaintiff's arrest and the underlying

investigation; (5) the *Monell* claim against the Town of East Hartford; and (6) the state law actions under Connecticut General Statutes §§ 52–557 and 7–465. *See* Defs.' Mem. at 34.

According to Defendants, the only claims that would remain if their motion were granted in full would be: (1) claims for excessive force against Ms. Weaver under § 1983 and the Connecticut Constitution; (2) common law assault and battery claims against Ms. Weaver; (3) a negligence claim against Ms. Weaver arising from her alleged use of excessive force; (4) a recklessness claim against Ms. Weaver; (5) intentional and negligent infliction of emotional distress claims against Ms. Weaver arising from her alleged use of excessive force; and (6) a claim under Connecticut General Statute § 52–557n against the Town of East Hartford arising from Ms. Weaver's alleged use of excessive force. *Id.*

On April 22, 2019, Mr. Ravalese opposed the motion. *See* Pl.'s Opp.

On May 10, 2019, Defendants filed a reply to Mr. Ravalese's opposition. Reply in Support of Defs.' Mot., dated May 10, 2019 ("Reply"), ECF No. 88.

On May 30, 2019, the Court held oral argument and reserved decision. Minute Entry, dated May 30, 2019, ECF No. 89.

## II.     STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law.") (citing *Anderson*, 477 U.S. at 248).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017). A court will not draw an inference of a genuine dispute of material fact from conclusory

allegations or denials, *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

## III.    DISCUSSION

### A.  Claims Against John Doe and Jane Doe

Defendants move for summary judgment on all claims that were brought against John Doe and Jane Doe, as Mr. Ravalese never sought to identify either of these defendants or serve them with process as required by Federal Rule of Civil Procedure 4(m). "On this basis alone," Defendants argue, "the Doe defendants should be dismissed from the case." Defs.' Mem. at 8 (citing *Minney v. Kradas*, No. 3:01-cv-1543 (EBB), 2004 WL 725330, at *3 (D. Conn. Mar. 31, 2004); *Cammick v. City of N.Y.*, No. 96 Civ. 4374 (RPP), 1998 WL 796452, at *1 (S.D.N.Y. Nov. 17, 1998)).

Mr. Ravalese claims that John Doe has been identified as Officer Richard Hill, "as he was one of the officers at the scene during the time of the incident." Pl.'s Opp. at 8. Accordingly, "plaintiff seeks this Honorable Court's leave, pursuant to Fed. R. Civ. P. 15, to substitute him as a party-defendant for his failure to intervene to prevent the constitutional violations." *Id.* (citing Fed. R. Civ. P. 15).

Defendants object that this request has not been properly filed as a motion and therefore should not be granted. Defs.' Reply at 5 n.1. Defendants further argue that substantively this amendment is improper because the statute of limitations on a claim against Mr. Hill may have run. *Id.*

The Court agrees.

Absent a proper motion setting forth Mr. Ravalese's basis for amending the Complaint and explaining why leave to amend should be granted under the governing legal standard—particularly in light of the fact that discovery ended months ago without any amendment having been filed—the Court will not grant this amendment. *See Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) ("Generally, '"John Doe" pleadings cannot be used to circumvent statutes of limitations because replacing a "John Doe" with a named party in effect constitutes a change in the party sued.' John Doe substitutions, then, 'may only be accomplished when all of the specifications of Fed. R. Civ. P. 15(c) are met.'") (quoting *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993)); *see also Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010) ("Where an amended pleading changes a party or a party's name, [Federal Rule of Civil Procedure 15(c)] requires, among other things, that 'the party to be brought in by amendment . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.'") (quoting FED. R. CIV. P. 15(c)(1)(C)).

The Court thus will reserve decision as to summary judgment on all remaining claims against John Doe, until after it has considered a properly filed motion to amend, which must be filed no later than June 28, 2019. That motion should address the applicable legal standards under Federal Rules of Civil Procedure 15(a) and 15(c), and comply with the requirements of this Court's Local Rules. *See* D. Conn. L. Civ. R. 7(f) (stating requirements for filing motion to amend pleadings in this District).

Failure to timely file such a motion may be grounds for denying such an amendment in the future, and may result in the Court granting summary judgment and dismissing the claims against John Doe for failure to identify and serve John Doe with process as required by Federal Rule of Civil Procedure 4(m). *See Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d

Cir. 2008) (per curiam) ("While Federal Rule of Civil Procedure 15(a) states that leave to amend should be granted "when justice so requires," motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.") (quoting FED. R. CIV. P. 15(a); citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Minney*, 2004 WL 725330, at *3 ("John Doe 1 and Jane Doe 1 have not yet been identified nor have they been served with process. Accordingly, summary judgment is granted as to any claims against those defendants under Fed. R. Civ. P. 4(m).") (citation omitted); *see also Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

Because Mr. Ravalese does not object to dismissing Jane Doe, however, the Court grants summary judgment to Defendants as to all claims against her, and will dismiss her as a defendant in this action.

### B. Malicious Prosecution

A plaintiff seeking to maintain a claim for malicious prosecution under § 1983 must show: (1) a seizure or other perversion of proper legal procedures implicating plaintiff's personal liberty and privacy interests under the Fourth Amendment; and (2) that criminal proceedings were initiated or continued against plaintiff, with malice and without probable cause, and were terminated in his or her favor. *Lanning v. City of Glen Falls*, 908 F.3d 19, 24 (2d Cir. 2018). There must be an "affirmative indication of innocence" demonstrating that the proceedings were terminated in his or her favor. *Id.* at 28 ("When a person has been arrested and indicted, absent an affirmative indication that the person is innocent of the offense charged, the government's

failure to proceed does not necessarily 'impl[y] a lack of reasonable grounds for the prosecution.'") (quoting *Conway v. Vill. of Mount Kisco*, 750 F.2d 205, 215 (2d Cir. 1984).

Defendants argue that Mr. Ravalese cannot point to an "affirmative indication of innocence" and that his claim for malicious prosecution under § 1983 then fails as a matter of law.

Mr. Ravalese now seeks to "withdraw[] his claim regarding malicious prosecution." Pl.'s Opp. at 13. After a motion for summary judgment has been filed, Mr. Ravalese's statement alone, however, is not enough. *See* FED. R. CIV. P. 41(a)(2) ("Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."); *Belgada v. Hy's Livery Serv.*, No. 3:18-cv-177 (VAB), 2019 WL 632283, at *3 (D. Conn. Feb. 14, 2019) ("Once an answer or motion for summary judgment has been served, however, a plaintiff must seek a court order for dismissal.") (citing FED. R. CIV. P. 41(a)(2)).

Because, as a matter of law, in the absence of "affirmative indication of innocence," Mr. Ravalese, however, cannot maintain a claim for malicious prosecution, there is no basis for this claim and it will be dismissed.

### C. False Arrest Claim

"A § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest." *Kent v. Katz*, 312 F.3d 568, 573 (2d Cir. 2002) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)). "Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the

person to be arrested." *Singer*, 63 F.3d at 119 (citations and internal quotation marks omitted).

"The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, or may require a trial if the facts are in dispute." *Weyant*, 101 F.3d at 852 (internal citations omitted).

Defendants argue that Officer Weaver had probable cause to arrest Mr. Ravalese, and therefore has a complete defense to any claim of false arrest against her. More specifically, Defendants argue that Officer Weaver's conversation with Michael Ravalese provided her with probable cause for the arrest as a matter of law because she believed Michael Ravalese told her the truth about what occurred with Harry Ravalese, and because her interaction with Harry Ravalese did not undermine Michael Ravalese's earlier report. *See* Defs.' Mem. at 11.

Plaintiff contends, however, that there are genuine disputes of material fact as to the pertinent events and the knowledge of the officers.

The Court agrees.

 "The evidence presented so far in this case, when viewed in the light most favorable to the plaintiff, indicates that there are genuine issues of material fact as to whether the plaintiff's arrest was supported by probable cause." *Colon v. Ludemann*, 283 F. Supp. 2d 747, 760 (D. Conn. 2003).

First, there appear to be genuinely disputed facts as to what exactly Michael Ravalese told Officer Weaver, and thus whether Officer Weaver received "'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *Curley v. Vill. of Suffern*, 268 F.3d 65, 69–70 (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)).

Second, Harry Ravalese told Officer Weaver that she was making a "terrible mistake." Defs.' SMF ¶ 26; Pl.'s SMF ¶ 26. That would appear to be a "circumstance[] [that] raise[s] doubt" as to the putative victim or eyewitness's "veracity," which would mitigate a finding of probable cause. Yet it is not clear from the undisputed facts, viewed in the light most favorable to Mr. Ravalese, that Mr. Ravalese was given an opportunity to challenge the account allegedly provided by his brother before Officer Weaver arrested him.

Given these credibility issues, the Court, at this stage, cannot determine that Officer Weaver had probable cause for Mr. Ravalese's arrest as a matter of law and cannot grant summary judgment on this basis.

### D. Qualified Immunity as to the False Arrest Claims

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). However, "[a] defendant is entitled to qualified immunity only if he can show that, viewing the evidence in the light most favorable to plaintiffs, no reasonable jury could conclude that the defendant acted unreasonably in light of the clearly established law." *Golodner v. Berliner*, 770 F.3d 196, 205 (2d Cir. 2014) (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 148 (2d Cir. 2006)). "To overcome the defense of qualified immunity, a plaintiff must show both (1) the violation of a constitutional right and (2) that the constitutional right was clearly established at the time of the alleged violation." *Huth v. Haslun*, 598 F.3d 70, 73 (2d Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

An arresting officer is entitled to qualified immunity on a false arrest claim under § 1983 "so long as 'arguable probable cause' was present when the arrest was made." *Figueroa v.*

*Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 390

(2d Cir. 2013)); *see also Cerrone v. Brown*, 246 F.3d 194, 202 (2d Cir. 2001) (recognizing that

officers "need only have possessed 'arguable' probable cause to seize [the plaintiff], not actual

probable cause."). "A police officer has arguable probable cause 'if either (a) it was objectively

reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable

competence could disagree on whether the probable cause test was met.'" *Figueroa*, 825 F.3d at

100 (quoting *Zalaski*, 723 F.3d at 390); *see also Cerrone*, 246 F.3d at 202–03 ("Arguable

probable cause exists when 'a reasonable police officer in the same circumstances and

possessing the same knowledge as the officer in question could have reasonably believed that

probable cause existed in the light of well established law.'") (quoting *Lee v. Sandberg*, 136 F.3d

94, 102 (2d Cir. 1997)).

"Put another way, an arresting officer will find protection under the defense of qualified

immunity unless "no reasonably competent officer" could have concluded, based on the facts

known at the time of arrest, that probable cause existed." *Figueroa*, 825 F.3d at 100 (citing

*Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Defendants argue that Officer Weaver is entitled to qualified immunity as to Mr.

Ravalese's claims of false arrest under 42 U.S.C. § 1983[2] because there was "at the very least,

arguable probable cause for plaintiff's arrest." Defs.' Mem. at 14 (citing *Colon*, 283 F. Supp. 2d

at 761).

Mr. Ravalese argues that "there are many genuine issues of material fact as to whether it

was 'objective reasonable' for the investigating officers to find probable cause for arresting the

---

[2] Qualified immunity "does not provide a defense to state-law intentional torts[.]" *Melillo v. Brais*, No. 3:17-cv-520 (VAB), 2019 WL 1118091, at *17 (D. Conn. Mar. 11, 2019) (citing *Schnabel v. Tyler*, 230 Conn. 735, 741 (1994); *Williams v. Hauser*, No. 3:96-cv-786 (AHN), 1998 WL 241218, at *7 (D. Conn. May 7, 1998)).

plaintiff based on the 'investigation' of the alleged breach of peace, or whether 'officers of reasonable competence could disagree on whether the probable cause test was met' in this case." Pl.'s Opp. at 14 (quoting *Golio v. Suggs*, 285 F. App'x 773, 775 (2d Cir. 2008)).

The Court disagrees.

Because Officer Richard Hill accompanied Officer Weaver at the time of the arrest of Mr. Ravalese, *See* Defs.' SMF ¶ 5, Pl.'s SMF ¶ 5, Mr. Ravalese, without more, cannot claim that "no reasonably competent officer" could have concluded, as Officer Weaver allegedly did, that she had probable cause to arrest Mr. Ravalese for breach of peace. Officer Weaver therefore had, at least, "arguable probable cause" to arrest Mr. Ravalese and is entitled to qualified immunity.

Accordingly, Defendants are entitled to summary judgment as to Mr. Ravalese's false arrest claim under § 1983.

### E. *Monell* Claim

"Congress did not intend municipalities to be held liable [under section 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Services of City of N.Y.*, 436 U.S. 658, 691 (1978). To prevail on a claim against a municipality under section 1983 based on the actions of a public official, a plaintiff must prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *see also Miron v. Town of Stratford*, 881 F. Supp. 2d 280, 284 (D. Conn. 2012) (to establish municipal liability, plaintiff must show that municipality violated federal right through municipal policy, custom, or practice or decision of municipal policymaker with final policymaking authority).

Defendants argue that they are entitled to summary judgment because (1) the Town's alleged policies regarding training for officers who handle police canines could not have caused the alleged constitutional violations as the undisputed facts do not indicate the officers were handling a police canine; (2) the "paucity of evidence" as to any specific policies is insufficient to allow that claim to reach a jury; and (3) that there is no evidence of deliberate indifference that would support a *Monell* claim for failure to supervise and/or train theory. Defs.' Mem. at 17; Compl. at Count 12, ¶ 31.

The Court agrees.

First, there is nothing in this record indicating the use of a police canine during the investigation and arrest of Mr. Ravalese. *See* Defs.' Mem. at 19. Accordingly, any challenge to this specific policy cannot have caused the alleged constitutional torts here.

Second, Mr. Ravalese has not pointed to any specific evidence identifying "a specific deficiency in the city's training program" that is "'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)). While Mr. Ravalese argues that Defendants are attempting to "reverse the burden in summary judgment by requiring" him "to introduce evidence to support the claim, as opposed to [Defendants] introducing evidence showing they are entitled to summary judgment[,]" *see* Pl.'s Opp. at 18–19, a plaintiff may not "rest on his allegations . . . to get to a jury without 'any significant probative evidence tending to support the complaint.'" *Anderson*, 477 U.S. at 249 (quoting *Cities Serv.*, 391 U.S. at 290). "[T]he plaintiff must present affirmative evidence in order to defeat . . . summary judgment.." *Id.* at 257. "Conclusory allegations, conjecture, and

speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citing *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998)).

Thus, Mr. Ravalese "'may not rely on mere speculation or conjecture as to the true nature of the facts to overcome'" summary judgment.[3] *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)). Mr. Ravalese cites to the deposition testimony of East Hartford police officers on East Hartford's alleged policy of self-reporting the use of force, as sufficient at this stage of the case for this claim to go to a jury. *See* Pl.'s Opp. at 20–21. He argues that because of this policy "there was no report of Weaver's use of force on the plaintiff" and "plaintiff's injuries" and the "level of force used" were "not properly documented." *Id.* at 20.

But even assuming that this description of the East Hartford policy is true, which the Court must at this stage of the case, Mr. Ravalese has failed to point to evidence in the record indicating that this policy was so closely related to the ultimate injury that it actually caused the use of force. Apart from identifying that the self-reporting policy exists, the depositions cited by Mr. Ravalese do not create a genuine issue of fact from which a jury could conclude that the

---

[3] Likewise, "a jury may not base its verdict on mere speculation, surmise or guesswork." *Prunier v. City of Watertown*, 936 F.2d 677, 680 (2d Cir. 1991) (citation omitted); *see also Jaquez v. Flores*, No. 10 Civ. 2811 (KBF), 2016 WL 1267780, at *4 (S.D.N.Y. Mar. 30, 2016) ("Plaintiffs have proffered no evidence that supports that wound A was a substantial contributing factor in Jaquez's death. Instead, plaintiffs argue that the jury should be allowed to infer that the wound was a substantial contributing factor without any supportive medical evidence. But this merely seeks to have the jury engage in speculation. There is no principle of law that would allow this.") (citing *Prunier*, 936 F.2d at 680); *Llewellyn v. Asset Acceptance, LLC*, 669 F. App'x 66, 68 (2d Cir. 2016) ("Llewellyn has not provided any evidence creating a genuine dispute that her debt was sold to the Citibank Trust. The district court correctly determined that there was no genuine issue of material fact as to Asset's valid ownership of the debt.") (citations omitted); *Henderson v. Sikorsky Aircraft Corp., Inc.*, 590 F. App'x 9, 10 (2d Cir. 2014) ("Nor has he produced any evidence suggesting that Sikorsky's explanation is a camouflage for more insidious motives, testifying only to his 'belief' that his failure to receive a pay increase was in fact racially motivated—an entirely speculative assertion that in any event does not speak directly to Henderson's claim of retaliatory animus. Henderson's conclusory allegations thus fail to create a genuine dispute of material fact sufficient to defeat summary judgment.") (citations omitted); *Hicks*, 593 F.3d at 167(affirming the granting of summary judgment where, among other things, "Plaintiffs' affidavits on this point lack specifics and are conclusory; a party cannot create a triable issue of fact merely by stating in an affidavit the very proposition they are trying to prove . . . .") (citations omitted).

policy "created a culture that allowed abuse to exist" that directly "led to constitutional violations of the plaintiff's rights." *Id.*

Third, Mr. Ravalese has identified no evidence of deliberate indifference that would support a *Monell* claim for failure to supervise and/or train the officers.

"To prove such deliberate indifference, the plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious." *Vann v. City of N.Y.*, 72 F.3d 1040, 1049 (2d Cir. 1995) (citing *City of Canton*, 489 U.S. at 390). "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Id.* (citations omitted).

Plaintiff contends that "[a] jury could readily conclude that the City of East Hartford failed to adequately train its officers regarding when and how to use force, as well as how to assess, monitor and provide the proper medical assistance necessary when a detainee such as the plaintiff suffered an injury." Pl.'s Opp. at 22. Again, however, Plaintiff has failed to point to any concrete evidence in the record that would suggest any such jury finding could be based on more than speculation.

Accordingly, Defendants are entitled to summary judgment as to Mr. Ravalese's *Monell* claim against East Hartford and Chief Sansom.

In addition, to the extent that Mr. Ravalese's Complaint alleges official capacity claims under 42 U.S.C. § 1983 against Officer Weaver, John Doe, and Chief Sansom, these claims are duplicative of the *Monell* claims against East Hartford. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' As long as the government entity

receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (quoting *Monell*, 436 U.S. at 690 n.55; citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). Indeed, Mr. Ravalese has conceded as much. *See* Pl.'s Opp. at 8 ("Plaintiff concedes that claims against the officers in their official capacity could be duplicative to the *Monell* claims against the town.").

Accordingly, the Court grants summary judgment as to these duplicative claims as well.

### F. Qualified Immunity as to Negligence Claims

Municipal employees in Connecticut are generally personally liable for state law torts arising from "the misperformance of ministerial acts," but enjoy "qualified immunity" in the performance of governmental acts."[4] *Mulligan v. Rioux,* 229 Conn. 716, 727 (Conn. 1994) (citing *Burns v. Bd. of Educ.*, 228 Conn. 640, 645 (1994)). "'Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature.'" *Id.* (quoting *Gauvin v. New Haven*, 187 Conn. 180, 184 (1982)). "In contrast, 'ministerial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion.'" *Id.* (quoting *Wright v. Brown*, 167 Conn. 464, 471 (1975) (internal quotation marks and alterations omitted)).

But there are three recognized exceptions to this discretionary act immunity: (1) when the alleged conduct involves malice, wantonness, or intent to injure; (2) when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; and (3) when the circumstances make it apparent to the public officer that his or her failure to act

---

[4] As the Connecticut Supreme Court has recognized, "[t]he standard of qualified immunity that protects public officials from civil suits pursuant to § 1983, arising from the performance of their discretionary functions, is distinct from that established under our common law." *Mulligan*, 229 Conn. at 729 (finding error where the trial court applied the federal qualified immunity standard to state law tort claim of malicious prosecution).

would be likely to subject an identifiable person to imminent harm. *Doe v. Petersen,* 279 Conn. 607, 615–16 (Conn. 2006).

The "identifiable person-imminent harm exception has three requirements: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm . . . . All three must be proven in order for the exception to apply.'" *Haynes v. City of Middletown,* 314 Conn. 303, 312–11 (2014) (quoting *Edgerton v. Clinton,* 311 Conn. 217, 229 (2014)).

Defendants argue that they are entitled to qualified immunity as a matter of law with respect to Mr. Ravalese's claims for negligence that are based on the investigation and arrest,[5] as there is no disputed issue of material fact as to whether any of the recognized exceptions to discretionary act immunity applies to Plaintiff's claims.[6] Defs.' Mem. at 22.

The Court agrees.

Mr. Ravalese does not dispute that the first two exceptions do not apply, but contends that the imminent harm exception does because he was an identifiable victim. *See* Pls.' Opp. at 23 ("Certainly, consistent with *Haynes,* a person who merely comes to the door to speak with police officers, who is then forced to the ground without much discussion, and then dragged to a

---

[5] The Court notes that Mr. Ravalese's claims that the officers were negligent in their use of excessive force, and in their failure to intervene to prevent the use of unreasonable force, could satisfy the third exception. "Connecticut courts have held that where, as here, an officer is alleged to have used excessive force against a person, he may be found to have subjected an identifiable person to imminent harm and therefore is not protected from suit by the doctrine of governmental immunity." *Odom v. Matteo,* 772 F. Supp. 2d 377, 395 (D. Conn. 2011) (collecting cases); *Loguidice v. City of Hartford,* No. 3:11-cv-786 (VAB), 2015 WL 4094181, at *7 (D. Conn. Jul. 7, 2015) ("negligence-based claims for [the officers'] alleged use of excessive force fall into one of the exceptions for discretionary act immunity under Connecticut law."). Defendants do not seek dismissal of these claims. *See* Defs.' Mem. at 34 ("Thus, the only claims which should remain for trial are those against Officer Weaver for unreasonable force pursuant to . . . negligence (Count Four) . . . . The only claim against the Town proceeding to trial is that pursuant to § 52-557n for Officer Weaver's negligent use of force (Count Five).").

[6] Defendants also argue that the existence of probable cause "negates the requisite element of unreasonableness" for a claim of negligence. Defs.' Mem. at 21. Because, however, the Court found a genuine dispute of material fact as to whether there was probable cause for the arrest, that argument would properly be raised at trial.

cruiser while handcuffed and relaying he is in pain, constitutes an easily identifiable and immediate victim of such unlawful actions by a police officer."). But all three requirements of the exception must be proven for it to apply here.

The Connecticut Supreme Court recently held that "the proper standard for determining whether a harm was imminent is whether it was apparent to the municipal defendant that the dangerous condition was so likely to cause harm that the defendant had a clear and unequivocal duty to act immediately to prevent the harm." *Haynes*, 314 Conn. at 322–23 (overruling *Burns v. Board of Education*, 228 Conn. 640 (1994), and other cases holding that a foreseeable harm may be deemed imminent if the condition that created the risk of harm was only temporary and the risk was significant and foreseeable). Defendants argue that, under the *Haynes* standard, "imminent harm" is missing from this record.[7]

The Court agrees.

Focusing solely on the defendant officers' alleged negligence with respect to the investigation and arrest, as a matter of law, the conduct alleged—responding to a 911 call, interviewing witnesses and the alleged victim in response, knocking on Plaintiff's door, and then deciding to arrest him—was not a dangerous condition so likely to cause Plaintiff harm that a clear and unequivocal duty to act immediately to prevent the harm was created. *See Martinez v. City of New Haven*, 328 Conn. 1, 11 (2018) ("[P]laintiff failed to satisfy the imminent harm prong of the exception because he failed to prove that it was apparent to the defendants that the claimed dangerous condition, namely, students running with safety scissors, was so likely to cause harm that a clear and unequivocal duty to act immediately was created . . . . Unlike the

---

[7] Defendants also argue that the exception does not apply because the alleged harm was not physical in nature. *See* Defs.' Mem. at 25 (collecting cases). Because most of the cases cited were decided before *Haynes*, and because the "harm" Plaintiff alleges—i.e., being violently thrown to the ground and dragged to the cruiser—is physical in nature, the Court does not reach this argument.

broken locker and student horseplay in the locker room in Haynes, which the school had been

aware was a problem since the beginning of the school year; the defendants had not experienced

any problems with student behavior in the auditorium. Thus, the defendants had no reasonable

way to anticipate that a student would be cut in the course of attempting to pick up safety

scissors in the auditorium at the same time as another student.") (citing *Haynes*, 314 Conn. at

325).

Otherwise, every decision to investigate or respond to an emergency report where it could

conceivably lead to the use of excessive force would be subject to liability. Put another way, the

disputed issue in this case is not whether the East Hartford police officers should have responded

to and investigated the 911 call—there is nothing in this record to suggest that they should not

have responded and investigated—but whether the officers acted appropriately when responding

and investigating, i.e., used too much force on Mr. Ravalese.

Accordingly, because the imminent harm exception does not apply, Defendants' qualified

immunity is an absolute bar to their liability here, and they are entitled to summary judgment as

to the negligence-based claims arising from the investigation and arrest only—but not with

respect to those that arise from the alleged use of excessive force.

### G. Intentional Infliction of Emotional Distress

Under Connecticut law, four elements must be established to prevail under a claim

for intentional infliction of emotional distress: "(1) that the actor intended to inflict emotional

distress or that he knew or should have known that emotional distress was the likely result of his

conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was

the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff

was severe." *Appleton v. Bd. of Educ. of Town of Stonington,* 254 Conn. 205, 210 (2000) (internal quotation marks and citation omitted).

Defendants argue that they are entitled to summary judgment as to Mr. Ravalese's claim of intentional infliction of emotional distress under Connecticut law—arising from the investigation and arrest only[8]—because Defendants' conduct was not "extreme or outrageous" as a matter of law.[9]

Plaintiffs argue that there are genuine issues of material fact as to "whether the defendants' actions were sufficiently extreme and outrageous[,]" and that the officers' conduct in this case is generally "similar to the conduct of the defendants" in two Connecticut Superior Court cases, *Balogh v. City of Shelton* and *Mikita v. Barre*, where the "courts held that there was a question of fact as to whether the defendants' actions were sufficiently extreme and outrageous." Pl.'s Opp. at 26–27 (citing *Balogh v. City of Shelton*, No. 99-0067521-S, 2002 WL 523225, *7 (Conn. Super. Ct. Mar. 18, 2002); *Mikita v. Barre*, No. CV990430564, 2001 WL 651171, * 1 (Conn Super. Ct. May 22, 2001)).

The Court disagrees.

---

[8] Defendants do not seek dismissal of the intentional infliction of emotional distress claim predicated on the use of excessive force. *See* Defs.' Mem. at 34 ("Thus, the only claims which should remain for trial are those against Officer Weaver for unreasonable force pursuant to . . . intentional and negligent infliction of emotional distress (Counts Seven and Eight, respectively)."). The Court therefore does not reach this issue..

[9] Defendants make two additional arguments. First, they argue that "[b]ecause of the existence of probable cause, plaintiff cannot predicate either emotional distress claim on his arrest," Defs.' Mem. at 27, an argument the Court addresses in further detail below. Second, Defendants argue that Mr. Ravalese has produced no evidence that he has suffered any "emotional upset of a very serious kind" and, specifically, a lack of medical evidence given that he "has never been diagnosed with depression or anxiety" and has not been "prescribed with any medication for such a malady following his arrest." Defs' Mem. at 27. But "it is not clear that medical evidence is required for a finding of 'severe' emotional distress[.]" *Zadrowski v. Town of Plainville*, No. 3:09-cv-1367 (DJS), 2013 WL 5435491, at *13 (D. Conn. Sept. 30, 2013); *see also Birdsall v. City of Hartford*, 249 F. Supp. 2d 163, 175 (D. Conn. 2003) ("It is not clearly established that failure to seek medical treatment precludes a showing of severe emotional distress sufficient to establish a claim of intentional infliction of emotional distress."). As a result, the Court declines to grant summary judgment on this basis.

First, these cases are distinguishable.[10]

Second, and more importantly, "[w]hether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." *Appleton*, 254 Conn. at 210 (citing *Bell v. Bd. of Educ.*, 55 Conn. App. 400, 410 (1999)). "'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* at 210–11 (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. d (Am. Law Inst. 1965)).

Here, the intentional infliction of emotional distress claims related to the investigation and arrest can be distinguished from the excessive force claim and evaluated separately to determine whether the conduct of the investigation and arrest, apart from the use of force, was extreme and outrageous.

Whether or not there was probable cause for the arrest, it is undisputed that the investigation undertaken by Officer Weaver occurred in response to a citizen report of an elderly woman in distress. It is also undisputed that Officer Weaver interviewed Michael Ravalese and,

---

[10] In *Balogh*, the court treated the investigation, arrest, and use of force as one continuous course of conduct, finding that reasonable minds could differ as to whether the entire course of conduct was extreme and outrageous. *See Balogh*, 2002 WL 523335, at *7 ("The plaintiff argues that the defendants engaged in extreme and outrageous conduct by arresting the plaintiff without probable cause and without an adequate investigation, using excessive force in arresting the plaintiff, and erroneously representing in the police report that the plaintiff was intoxicated and had made certain inculpatory statements. Should the plaintiff establish such facts to the satisfaction of a jury, a jury could reasonably find that the police officers engaged in an extreme abuse of their authority in a way which is intolerable in a civilized society.") (footnote and citations omitted). As a result, the court did not separately consider whether the investigation and arrest, on their own, were "extreme and outrageous."

In *Mikita*, the plaintiff was arrested after being lured to the United States Package Office under false pretenses—believing that he was responding to a notice that he had received an oversized package—and was then brought into a back room, placed under arrest, and handcuffed, before police realized that they had the arrested the wrong person. *Mikita*, 2001 WL 651171, at *1. There were no accusations of excessive force involved. The court also did not discuss its reasoning, nor did it hold that the investigation and wrongful arrest were extreme and outrageous; it simply held that it found no sufficient basis to overturn a previous judge's ruling that reasonable minds could differ as to whether the conduct was extreme and outrageous. *Id.* at *4.

afterward, decided to interview Harry Ravalese. The Court finds no support for the notion that an investigation undertaken in such circumstances constitutes "extreme or outrageous" conduct "utterly intolerable in a civilized community." *Appleton*, 254 Conn. at 210–11.

An arrest supported by probable cause generally cannot be the basis for an intentional infliction of emotional distress claim.[11] But "those courts also routinely recognize the possibility that—much like the Fourth Amendment requires that a search be *both* justified and conducted in a reasonable manner—other factors might allow an arrest properly based on probable cause to give rise to tort liability." *Cotto v. City of Middletown*, 158 F. Supp. 3d 67, 88 (D. Conn. 2016) (collecting cases). Thus, probable cause may not always preclude intentional infliction of emotional distress liability, where other aggravating factors that may constitute extreme and outrageous conduct are present.[12]

Similarly, where probable cause has not yet been established, courts have recognized that a plaintiff generally must allege more than the mere fact of the arrest to sustain an intentional

---

[11] *See, e.g., Brooks v. Sweeney*, 299 Conn. 196, 207, 209 (2010) (affirming trial court's finding that warrant was supported by probable cause, and therefore defendant was entitled to judgment as a matter of law on the intentional infliction of emotional distress claim because "although 'being arrested and subject to prosecution may have been traumatic to the plaintiff, enforcement of the law can hardly be called conduct beyond the acceptable bounds of decent society.'") (quoting *Brooks v. Sweeney*, No. CV065005224S, 2008 WL 5481203, at *4 (Conn. Super. Ct. Nov. 28, 2008); *Washington v. Blackmore*, 119 Conn. App. 218, 223 (2010) (affirming trial court's finding that probable cause for a warrantless arrest existed, and therefore precluded recovery on intentional infliction of emotional distress claim); *see also Lamar v. Brevetti*, 173 Conn. App. 284, 290 (2017) ("The existence of probable cause, under the facts and circumstances of this case, is irrefragable and therefore the court properly rendered summary judgment as to the negligent and intentional infliction of emotional distress counts.").

[12] *See Zalaski v. City of Hartford*, 704 F. Supp. 2d 159, 176 (D. Conn. 2010) ("As a matter of law—absent other factors that may constitute 'extreme and outrageous' conduct—an arrest will not be considered intentional infliction of emotional distress if the arresting officer has probable cause to make the arrest.") (citing *Winter v. Northrop*, No. 3:06-cv-216 (PCD), 2008 WL 410428, at *7 (D. Conn. Feb. 12, 2008) ("To the extent Plaintiff's claim for intentional infliction of emotional distress against Defendant Northrop is based on the mere fact of his involvement in Plaintiff's arrests, it similarly fails."); *Blalock v. Bender*, No. 3:04-cv-1519, 2006 WL 1582217, at *6–7 (D. Conn. June 1, 2006) ("[I]t has not been shown that Defendant's conduct was either extreme or outrageous. To the contrary, Defendant has shown that he had probable cause to arrest Plaintiff. Moreover, the evidence shows that Plaintiff was not arrested in front of his peers, but in the Vice Principal's office. Pursuant to Plaintiff's request, the arresting officers did not handcuff Plaintiff inside the school, but waited until they were in the parking lot to do so. Plaintiff, in his deposition, admits that he did not notice whether any other people were around the police cruiser at the time he was being handcuffed.")).

infliction of emotional distress claim. *See, e.g.*, *Chase v. Nodine's Smokehouse, Inc.*, 360 F.

Supp. 3d 98, 119 (D. Conn. 2019) ("Ms. Chase alleges more than the simple fact of her arrest;

she alleges improper conduct leading up to an arrest which caused her significant emotional

distress . . . . these allegations are sufficient to state a claim for intentional infliction of emotional

distress."); *Lawson v. Hilderbrand*, 88 F. Supp. 3d 84, 101–02 ("The police gained entry to

the Lawson home late at night under false pretenses. . . . . They arrested Duncan despite their

absence of lawful authority to be in the home. . . . . They did all this because Duncan stood up for

his constitutional right to have the police obtain a warrant to search his home. A reasonable jury

could conclude that the police engaged in outrageous conduct intended to inflict emotional

distress on the Lawson family."), *rev'd on other grounds*, 642 F. App'x 34 (2d Cir. 2016).

As a result, the general rule that the conduct, to be considered "extreme and outrageous,"

must be "so outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community," is what controls. A finding of probable cause thus may indicate that the conduct of

the arrest was not "extreme or outrageous." *See, e.g.*, *Washington v. Blackmore*, 2008 WL

5156436, at *7 (Conn. Super. Ct. Nov. 10, 2008) ("While an arrest absent probable cause might

be sufficiently outrageous to give rise to a claim for intentional infliction of emotional

distress, the plaintiff has not offered any allegations that the arrest was any more outrageous than

a standard arrest. . . . . Because it is found that the defendant officers had probable cause when

arresting the plaintiff, the defendants' conduct in making the arrest lacks the severity or

outrageousness that a viable claim for intentional infliction of emotional distress requires.")

(footnote omitted), *aff'd*, 119 Conn. App. 218 (2010).

As a result, while the intentional infliction of emotional distress claim based on alleged excessive force will proceed to trial, the mere fact of the arrest here—without more—cannot sustain an intentional infliction of emotional distress claim.

Accordingly, the Court grants summary judgment as to Mr. Ravalese's claim of intentional infliction of emotional distress arising from Defendants' investigation and arrest only.

### H.  Negligent Infliction of Emotional Distress

"To prevail on a claim of negligent infliction of distress, the plaintiff is required to prove that '(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress.'" *Hall v. Bergman*, 296 Conn. 169, 182 n.8 (2010) (quoting *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003)).

Defendants argue  that Plaintiff's claim for negligent infliction of emotional distress arising from the investigation and arrest "fails for the same reasons that her negligence claim does, namely, that the harm at issue is not the physical injury typically recognized by Connecticut courts, and plaintiff has not presented evidence from which bodily harm can be reasonably inferred." Defs.' Mem. at 30 n.12.

Because the "imminent harm" exception does not apply to any negligence-based claims arising from the investigation and arrest, Defendants enjoy qualified immunity with respect to Plaintiff's negligent infliction of emotional distress claim.

Accordingly, the claim for negligent infliction of emotional distress arising from Defendants' investigation and arrest will be dismissed.

## I. Recklessness

To prevail on a claim of recklessness under Connecticut common law, a plaintiff must demonstrate a state of mind that indicates "more than negligence, more than gross negligence." *Craig v. Driscoll*, 262 Conn. 312, 342 (2003) (quoting *Craig v. Driscoll*, 64 Conn. App. 699, 720 (2001)). "Recklessness is a state of consciousness with reference to the consequences of one's acts . . . . The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them . . . . [R]eckless misconduct . . . . is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action." *Id.* (quoting *Craig*, 64 Conn. App. at 720).

Defendants argue that Plaintiff's claim for recklessness arising from the investigation and arrest fails because the standard for proving recklessness, as outlined above, is higher than the standard for proving negligence.[13] Defs.' Mem. at 30 n.12.

Because the officers' conduct in the course of the investigation and arrest did not indicate any "dangerous condition" that could satisfy the "imminent harm" exception to discretionary act immunity, Plaintiff has failed to offer any evidence on which a jury could reasonably conclude that the officers' conduct was reckless. *See, e.g.*, *Doe v. Boy Scouts of Am. Corp.*, 323 Conn. 303, 331 (2015) ("[T]he plaintiff presented evidence that would support a finding that the defendant was aware of numerous instances of sexual abuse of participants in the Boy Scouts during Boy Scout activities in the years preceding Hepp's sexual abuse of the plaintiff. . . . On the basis of this evidence, reasonable minds could disagree as to whether the risk of sexual abuse was

---

[13] Defendants have not moved to dismiss the claim of recklessness based on the officers' alleged use of excessive force. *See* Defs.' Mem. at 2 n.1.

sufficiently great such that the defendant either knew or should have known that its failure to take those precautions would expose Boy Scout participants to a great risk of harm. Accordingly, we conclude that the issue is one for the jury.") (citation omitted).

Accordingly, the claim of recklessness arising from the investigation and arrest will be dismissed.

### J.   Claims Under Art. I §§ 8, 20 of the Connecticut Constitution

Defendants argue that they are entitled to summary judgment as to Mr. Ravalese's claims under Article I, sections 8 and 20 of the Connecticut Constitution because these sections do not provide for recognized causes of action. Defs.' Mem. at 30 (citing *Salas v. Town of Enfield*, No. 3:14-cv-1883 (WWE), 2015 WL 5121440, at *2 (D. Conn. Aug. 30, 2015)).

Mr. Ravalese does not directly dispute this, but instead "withdraws his claims premised on a private cause of action under Article First, Sec. 8 & 20 of the Connecticut Constitution." Pl.'s Opp. at 27.

As discussed above, once a motion for summary judgment has been filed, Mr. Ravalese's statement alone is not enough. *See supra* § III.B.

Because, however, as a matter of law, Mr. Ravalese cannot maintain a claim under these constitutional provisions, these claims will be dismissed. *See Kelley Prop. Dev., Inc. v. Lebanon*, 226 Conn. 314, 339–40 (1993) (finding that a cause of action under Art. First, § 8 of the Connecticut Constitution does not exist and declining to recognize one); *ATC P'ship v. Town of Windham*, 251 Conn. 597, 616–17 (1999) (affirming *Kelley* and finding that the remedies already available under state and constitutional law "obviate the need for judicial recognition of a freestanding tort claim under article first, § 8, of our state constitution."); *Minto v. Dep't of Mental Health & Addiction Servs.*, No. HHDCV176076730S, 2018 WL 710124, at *9 (Conn.

Super. Ct. Jan. 11, 2018) ("Connecticut courts have unanimously declined to recognize a private cause of action under article first, § 20, of the Connecticut Constitution.") (collecting cases); *St. Louis v. Wu*, No. 3:19-cv-320 (KAD), 2019 WL 2357566, at *7 (D. Conn. Jun. 4, 2019) ("The Connecticut Superior Courts have repeatedly declined to recognize a private right of action under Article First §§ 1 and 20 of the Connecticut Constitution.") (collecting cases); *Monger v. Conn. Dep't of Transp.*, No. 3:17-cv-205 (JCH), 2017 WL 3996393, at *6 (D. Conn. Sept. 11, 2017) ("[T]he Connecticut Supreme Court has not recognized a private cause of action under [Art. First,] Section 20. Several Connecticut Superior Courts have considered the issue and refused to do so.") (collecting cases).

### K. Claims Under Conn. Gen. Stat. § 52–577n

Connecticut has replaced its common law, court-articulated rules of municipal liability with Connecticut General Statute § 52–577n. *See Considine v. City of Waterbury*, 279 Conn. 830, 836 (2006) (describing legislative history of the statute). The Connecticut Supreme Court has recognized that the statute "clearly and expressly abrogates the traditional common-law doctrine in this state that municipalities are immune from suit for torts committed by their employees and agents." *Spears v. Garcia*, 263 Conn. 22, 29 (2003) (citations omitted). Thus, a plaintiff may bring a direct cause of action for negligence against a municipality under this statute.[14] *Id.* at 24, 29, 46–47.

Significantly, the statute provides that a municipality "shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision

---

[14] The statute does not, however, impact the availability of qualified immunity as a common-law defense for municipal employees in their individual capacity. *See Spears*, 263 Conn. at 47 ("When a municipal employee is sued, he or she may assert qualified immunity as a common-law defense. This defense is intended to protect the employee, not the municipality that otherwise is cloaked with its own immunity absent express statutory abrogation.").

or any employee, officer or agent thereof acting within the scope of his employment or official duties; [and] (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit[.]" CONN. GEN. STAT. § 52–577n(a)(1). The statute further provides that a municipality "shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." CONN. GEN. STAT. § 52–577n(a)(2).

Defendants move for summary judgment on Mr. Ravalese's claims for negligence under this statute against East Hartford, arguing that he seeks to hold the town liable for negligence committed in the course of discretionary acts—an immunity which the statute, it contends, preserves.[15] Defs.' Mem. at 32–33.

The Court agrees, in part.

While the statute abrogates governmental immunity with respect to negligence in the course of non-discretionary acts, it preserves it with respect to discretionary acts. *See* CONN. GEN. STAT. § 52–557n(a)(2) ("Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the

---

[15] Defendants also move for summary judgment on Mr. Ravalese's claims for intentional torts under CONN. GEN. STAT. § 52-577n. *See* Defs.' Mem. at 32 ("The causes of action set forth in Counts Two (excessive force in violation of federal law and the Connecticut Constitution), Three (assault and battery), Six (recklessness), Seven (intentional infliction of emotional distress), Ten (failure to intervene under the state constitution), and Eleven (state constitutional claims for false arrest and malicious prosecution) are intentional torts . . . . there is no basis in the law to hold the Town liable for the intentional tort claims, and, consequently, the Town is entitled to summary judgment in its favor as to each such claim."). But the Complaint only alleges that East Hartford is liable under the statute for "the negligent acts of Defendant East Hartford Police Officers that were committed in the course and scope of their employment and that directly and proximately caused Plaintiff's severe and permanent injuries and damages[.]" Compl. ¶ 40. Accordingly, the Court need not reach this issue.

authority expressly or impliedly granted by law."). Determining whether a municipal official's alleged negligence occurred in the course of a ministerial duty is ordinarily a question of law that can be resolved on summary judgment. *See Ventura v. Town of East Haven*, 330 Conn. 613, 634 (2019) (reaffirming previous holdings that "the issue of whether a statute, regulation or other provision of law creates a ministerial duty ordinarily presents a question of law to be decided by the court" and expressly disavowing language in prior cases that created mistaken impression that it was ordinarily a question of fact).

As noted above, the alleged negligence of Officer Weaver in the use of excessive force could fall within the third recognized exception to governmental immunity; as a result, the Court cannot determine whether it is a discretionary act to which East Hartford would also be entitled to immunity at the summary judgment stage. *See Ventura*, 330 Conn. at 636 n.11 ("[A]lthough the ultimate determination of whether governmental immunity applies is typically a question of law for the court, there may well be disputed factual issues material to the applicability of the defense, the resolution of which are properly left to the trier of fact.") (collecting cases); *Odom*, 772 F. Supp. 2d at 399 ("Section 52–557n extends the same discretionary act immunity that applies to municipal officials to the municipalities themselves."); *Bussolari v. City of Hartford*, No. 3:14-cv-149 (JAM), 2016 WL 4272419, at *3 (D. Conn. Aug. 12, 2016) ("Connecticut courts have allowed for recovery under Connecticut's negligence-based municipal liability statute, Conn. Gen. Stat. § 52-577n, in cases involving allegations of excessive force by police officers.") (citations omitted).

East Hartford therefore is not entitled to summary judgment as to Plaintiff's claim under CONN. GEN. STAT. § 52–557n arising from the use of excessive force.

As discussed above, however, Defendants have established that the officers are immune from Plaintiffs' claims for negligence arising from the investigation and arrest only. *See supra* § III.F. Because "Section 52–557n extends the same discretionary act immunity that applies to municipal officials to the municipalities themselves[,]" *Odom*, 772 F. Supp. 2d at 399, East Hartford is entitled to summary judgment as to Mr. Ravalese's claims for negligence arising from the investigation and arrest.

### L. Indemnification Claim

Under Connecticut General Statute § 7–465, municipalities must indemnify their employees for "all sums" those employees become obligated to pay as damages for their tortious acts committed in the performance of their duties and within the scope of their employment, except for those sums arising from "willful[16] or wanton" acts performed while discharging their duties. CONN. GEN. STAT. § 7–465(a). This statute "imposes no liability upon a municipality for breach of any statutory duty of its own." *Ahern v. City of New Haven*, 190 Conn. 77, 82 (1983) (citation omitted). Rather, "[t]he municipality's liability is derivative." *Id.*; *Myers v. City of Hartford*, 84 Conn. App. 395, 401 (2004) ("Section 7–465 is an indemnity statute; it does not create liability.").

Thus, the "cause of action for indemnification concerns itself with the obligation to pay but only with respect to covered transactions." *Ahern*, 190 Conn. at 83. Accordingly, "the municipality's duty to indemnify attaches only when the employee is found to be liable and the

---

[16] The statute adopts the spelling "wilful," which is an alternative spelling of "willful." *See Willful*, BLACK'S LAW DICTIONARY (9th ed. 2009); *see also* Eugene Volokh, *Wilful vs. Willful*, VOLOKH CONSPIRACY (Oct. 19, 2011, 3:01 PM), http://volokh.com/2011/10/19/wilful-vs-willful/. Courts have accordingly used the term interchangeably. *See, e.g.*, *Edwards v. City of Hartford*, No. 3:13-cv-878 (WWE), 2015 WL 7458501, at *6 (D. Conn. Nov. 23, 2015) ("Section 7-465 is an indemnity statute, providing that the municipality's duty to indemnify attaches when the employee is found to be liable and the conduct does not fall within the exception for willful and wanton acts.").

employee's actions do not fall within the exception for wilful and wanton acts." *Myers*, 84 Conn. App. at 401.

Defendants argue that because Mr. Ravalese "cannot as a matter of law establish his negligence claims based on his arrest against Officer Weaver" he cannot sustain any claim for indemnification under CONN. GEN. STAT. § 7–465. Defs.' Mem. at 33.

Plaintiff accordingly argues that "if the defendant police officer(s) are found liable on any counts sounding in negligence, then the [Town] of East Hartford is obligated to reimburse the plaintiff for any judgment against the officer(s)." Pl.'s Opp. at 29.

The Court agrees.

While no claim for indemnification survives as to the negligence of the officers in the investigation and arrest only, as those negligence claims have already been dismissed, *see supra* § III.F, Plaintiff's claim for negligence arising from the use of excessive force remains in this case, *see supra* at n.5. Defendants argue that the excessive force claims involving allegations of "willful or wanton" acts would not result in indemnification.[17] *See* Defs.' Mem. at 33 ("As such, plaintiff may only seek damages arising from Officer Weaver's purported negligence, as each and every other common law claim asserted by plaintiff includes allegations of willful or wanton conduct."); *see also* CONN. GEN. STAT. § 7–465(a) (municipality shall pay damages for employee's tortious acts in performance of employee's duties, within scope of his employment, "and if such occurrence, accident, physical injury or damage was not the result of any willful or wanton act of such employee in the discharge of such duty.").

---

[17] The Connecticut Supreme Court has recognized that the terms "willful," "wanton," and "reckless" have "in practice . . . been treated as meaning the same thing . . . . willful, wanton, or reckless conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Matthiessen v. Vanech*, 266 Conn. 822, 833 (2003) (quoting *Craig v. Driscoll*, 262 Conn. 312, 342–43 (2003)).

But where negligence claims based on excessive force proceed to trial, derivative § 7–465 claims may also proceed to trial. *See, e.g.*, *Bussolari*, 2016 WL 4272419, at *5 ("Because the negligence claims against the individual officer defendants shall proceed to trial, the City of Hartford may also properly remain as a defendant in this case.") (citing *Edwards*, 2015 WL 7458501, at *6). Because Mr. Ravalese also alleges in his Complaint that such acts were intentional does not prevent him pursuing multiple theories of liability—including, as here, one asserting negligence in the use of excessive force. *See Bussolari*, 2016 WL 4272419, at *4 (declining to dismiss negligence claims as inconsistent with intentional tort claims in light of the "baseline rule that a plaintiff is generally permitted to plead and prove his or her case on alternative and sometimes inconsistent theories of liability."); *Alvia v. City of Waterbury*, No. 3:15-cv-1162 (RNC), 2018 WL 1587459, at *7 (D. Conn. Mar. 31, 2018) (adopting reasoning of *Bussolari* and declining to dismiss negligence claim as inconsistent with excessive force and intentional infliction of emotional distress claims) (citing *Bussolari*, 2016 WL 4272419, at *3).

Because genuine issues of material fact remain that preserve a basis for underlying liability sufficient to maintain a claim under CONN. GEN. STAT. § 7–465, the Court denies summary judgment on this claim.

## IV.    CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

The Court grants summary judgment to Defendants as to the following of Plaintiff's claims: (1) all claims against Jane Doe; (2) the claim for malicious prosecution under 42 U.S.C. § 1983; (3) the claim of false arrest under 42 U.S.C. § 1983; (4) the *Monell* claim against East Hartford and Chief Sansom; (5) the official capacity claims against Officer Weaver, John Doe,

and Chief Sansom, which are duplicative of the *Monell* claim; (6) the claims of negligence arising from the officers' investigation and arrest of Plaintiff only; (7) the claim of intentional infliction of emotional distress arising from the officers' investigation and arrest only; (8) the claim of negligent infliction of emotional distress arising from the officers' investigation and arrest only; (9) the claim of recklessness arising from the officers' investigation and arrest only; (10) the claims under Article I, §§ 8 and 20 of the Connecticut Constitution; and (11) the claims of municipal liability under CONN. GEN. STAT. § 52–557n that are based on the claims of negligence arising from the officers' investigation and arrest only.

The Court denies Defendants' motion with respect to the following claims: (1) the claim of municipal liability under CONN. GEN. STAT. § 52–557n, based on the claim of negligence arising from the officers' use of excessive force; and (2) the claim of indemnification under CONN. GEN. STAT. § 7–465, based on the claim of negligence arising from the officers' use of excessive force.

The Court reserves decision as to summary judgment on all remaining claims against John Doe, following a properly-filed motion to amend the Complaint and any subsequent briefing. As stated above, that motion must be filed no later than **June 28, 2019.**

Because the Court has granted summary judgment on all claims against Jane Doe, she is dismissed as a defendant in this case.

This case will proceed to trial against Officer Weaver on the following claims: (1) the claims of excessive force, under 42 U.S.C. § 1983 and the Connecticut Constitution; (2) the claims for assault and battery, under Connecticut law; (3) the claim for negligence arising from the officers' alleged use of excessive force, under Connecticut law; (4) the claim for recklessness arising from the officers' alleged use of excessive force, under Connecticut law; (5) the claim for

intentional infliction of emotional distress arising from the officers' alleged use of excessive force, under Connecticut law; and (6) the claim for negligent infliction of emotional distress arising from the officers' alleged use of excessive force, under Connecticut law.

The case will proceed against East Hartford on the following claims: (1) the claim of municipal liability under CONN. GEN. STAT. § 52–557n, based on the claim of negligence arising from the officers' use of excessive force; and (2) the claim of indemnification under CONN. GEN. STAT. § 7–465, based on the claim of negligence arising from the officers' use of excessive force.

**SO ORDERED** at Bridgeport, Connecticut, this 14th day of June, 2019.

      /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge